Betty Ruth HUGHES, Plaintiff,

v.

AMERADA HESS CORPORATION,
Defendant,

No. 98–117–CIV–FTM–17D.

United States District Court,
M.D. Florida,
Fort Myers Division.

June 28, 1999.

Ann Poe Angel, Ann Marie Poe Angel, P.A., Ft. Myers, FL, for Betty Ruth Hughes, plaintiff.

Joseph Elton Blitch, Brown & Green, P.A., James G. Brown, Brown & Green, P.A., Orlando, FL, for Amerada Hess Corpora, defendant.

### *ORDER ON MOTIONS*

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following:

Dkt. 14 Motion for Summary Judgment

Dkt. 15 Memorandum

Dkt. 17 Affidavit

Dkt. 18 Affidavit

Dkt. 19 Affidavit

Dkt. 20 Affidavit

Dkt. 22 Deposition

Dkt. 23 Deposition

Dkt. 24 Deposition

Dkt. 25 Continued Deposition

Dkt. 26 Deposition

Dkt. 27 Deposition

Dkt. 28 Affidavit

Dkt. 31 Affidavit

Dkt. 32 Affidavit

Dkt. 33 Affidavit

Dkt. 34 Affidavit

Dkt. 35 Affidavit

Dkt. 36 Response

Dkt. 37 Memorandum

Dkt. 38 Affidavit

Dkt. 39 Motion to Strike

Dkt. 42 Response

BACKGROUND

Defendant hired Plaintiff as a convenience store ("C-store") manager on or about February 1, 1990, and Plaintiff continued until her termination in late February 1997. Plaintiff was a C-store manager throughout her employment with Defendant.

Defendant's C-store Managers are supervised by Marketing Representatives. Each Marketing Representative oversees the operations of several C-stores. Plaintiff's first Marketing Representative was Joseph Stagnitta, who supervised Plaintiff from February 1, 1990 until approximately February 1993, when Stagnitta was assigned to supervise another set of C-stores. James Brunnell was Plaintiff's next Marketing Representative, from approximately February 1993 until Plaintiff was transferred to another C-store early in March of 1994 (from store No. 9337 to store No. 9334).

After Plaintiff was transferred, Joseph Stagnitta was her Marketing Representative again until he left employment with Defendant in approximately February, 1995. Plaintiff's next Marketing Representative was Wayne Caton, until he left employment with Defendant in approximately February, 1996. Plaintiff's final Marketing Representative was Joseph Grabowski from approximately February, 1996 until Plaintiff's termination.

Marketing Representatives report to Division Managers. Paul Brzezicki was Plaintiff's Division Manager during her last two years as Manager for C-store No. 9337, and during her first year as C-store Manager for C-store No. 9334, until approximately March, 1995. James Mills served as Plaintiff's Division Manager after Brzezicki, and throughout the remainder of Plaintiff's employment with Defendant.

Plaintiff was given three corrective action warnings by Grabowski for poor performance and violation of company policy. These corrective actions were dated June 11, 1996, July 12, 1996 and October 21, 1996, respectively. The second corrective action warning was "formal" and advised Plaintiff that her cash shortages had not improved since her June, 1996 corrective action warning, and that her projected cash shortages for July were high. The third corrective action warning was also formal and admonished Plaintiff due to her failure to follow security camera and recording system procedures. Plaintiff was evaluated by Grabowski in August, 1996.

Plaintiff alleges that Defendant limited promotional opportunities to Plaintiff by failing to provide her with training opportunities for the position of Marketing Representative. Furthermore, Plaintiff alleges that she was discouraged from applying for jobs which had traditionally been held by men, in particular, Marketing Representative.

Defendant's representative, Joe Grabowski, informed Plaintiff that she was being terminated due to an approximately two thousand dollar ($2,000) shrinkage at Defendant's C-Store No. 9334. Plaintiff alleges that other male managers suffered losses during the same time period and were not terminated. As such, Plaintiff alleges the reason given for her termination was a pretext.

Plaintiff was replaced in the interim as Store Manager of Store No. 9334 by Natalie Bennett, a female. Tammy Minko, a female, replaced Bennett as Store Manager of Store No. 9334 in mid-March 1997. The permanent replacement for Plaintiff was hired after Plaintiff filed her EEOC Charge. As such, Defendant was on notice of the sex discrimination charge pending against it.

*DISCUSSION*

Before the Court addresses Defendant's Motion for Summary Judgment, the Court will consider Defendant's Motion to Strike portions of Plaintiff's affidavit.

I. **Motion to Strike**

A. Standard of Review

■ Affidavits filed in opposition to a motion for summary Judgment which do not

comply with Federal Rule of Civil Procedure 56(e) are subject to a motion to strike. *Givhan v. Electronic Engineers, Inc.,* 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998). Federal Rule of Civil Procedure 12(f) provides "that upon motion by a party or upon the court's initiative at any time, the court may order stricken from any pleading any 'redundant, immaterial, impertinent, or scandalous matter.'" *See Seibel v. Society Lease, Inc.,* 969 F.Supp. 713, 715 (M.D.Fla.1997).

■ A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *See id.; Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 570 (S.D.Fla.1978) (citing *Augustus v. Board of Public Instruction,* 306 F.2d 862 (5th Cir.1962)). "Federal Rule of Civil Procedure 12(f) entitled 'Motion to Strike' plainly and clearly states that a motion to strike may be filed 'upon motion by a party within 20 days after service of the pleading upon the party.'" *Baldwin v. Northwestern Mutual Life Insurance Co.,* No. 92–1239–CIV–T–17B, 1994 WL 150831, at * 2 (M.D.Fla. April 14, 1994).

### B. Analysis

#### 1. Motion To Strike Entire Affidavit

Defendant contends that Plaintiff's affidavit is void and should be stricken in its entirety because Plaintiff's Affidavit does not sufficiently warrant that the statements made therein are based on Plaintiff's personal knowledge as required under Federal Rule of Civil Procedure 56(e).

In Defendant's Motion to Strike (Dkt. 39), Defendant asserts that in the notary section of the Affidavit, Plaintiff recedes from her statement that the affidavit is based on personal knowledge by merely acknowledging that the "Affidavit w[as] answered truthfully and completely to the best of her knowledge and ability." (Dkt. 39). Furthermore, Defendant asserts that by attesting that her Affidavit was based upon her personal knowledge and ability, Plaintiff nullified her averment that the Affidavit was based upon personal knowledge and likened her Affidavit to

one based upon mere information and belief. *Id.*

■ "[W]here there is a strict statutory requirement that an affidavit be based upon personal knowledge, as in Rule 56(e), then an affidavit based on information and belief is insufficient." *See Tingley Systems v. Bay State HMO Management Inc.,* 833 F.Supp. 882, 884 (M.D.Fla.1993). However, courts should not be "unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *See Lakeview Outlets, Inc. v. Uram,* 1996 WL 571520 * 2 (N.D.N.Y.1996)(quoting *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir.1985), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986)).

■ In the case at hand, Plaintiff mistakenly worded the notary section of the affidavit which read "to the best of her knowledge and ability," instead of stating that it was based on Plaintiff's personal knowledge. To find that the Affidavit does not comply with Federal Rule of Civil Procedure 56(e), merely for this reason, would be "unnecessarily hyper-technical and unduly harsh." *See id.*

Defendant also failed to show that Plaintiff's Affidavit contains any "redundant, immaterial, impertinent, or scandalous matter." *See Seibel* at 715. Additionally, Defendant's Motion to Strike does not establish that any of the allegations brought forth in Plaintiff's affidavit have no possible relation to the controversy, or that any of the allegations may cause prejudice to Defendant. *See id.; Poston* at 570. For this and the above reasons, Defendant's Motion to Strike Plaintiff's entire Affidavit is **denied**.

#### 2. Alternative Motion To Strike Portions of the Affidavit

Defendant also contends that the Plaintiff seeks to avoid summary judgment by means of her Affidavit, which contains numerous statements that directly contradict her deposition testimony, are not within the Plaintiff's personal knowledge, or are hearsay statements that are not admissible at the trial of this matter. Therefore, in the alternative,

Defendant requests that the Court strike portions of the Plaintiff's Affidavit.

■ "[W]here there is a strict statutory requirement that an affidavit be based upon personal knowledge, as in Rule 56(e), then an affidavit based on information and belief is insufficient." *See Tingley* at 884. Federal Rule of Civil Procedure 56(e) requires that affidavits be based on personal knowledge. *See* FRCP 56(e). Therefore, portions of Plaintiff's affidavit which are unsupported by personal knowledge should be stricken. Plaintiff made the following statements without evidence of personal knowledge:

1. "In paragraph 11 [of Grabowski's affidavit], Mr. Grabowski states that I had the worst consecutive cash shortage of any of the managers that he has supervised during his tenure as marketing representative. This is untrue." (Dkt. 39, citing Hughes Aff. ¶ 25).

2. "Dale Copping had an employee terminated for selling beer to a minor and was not suspended and did not have his pay docked."(Dkt. 39, citing Hughes Aff. ¶ 13).

3. "My termination by the Defendant, 'Hess' Corporation constitute an act of discrimination in employment because I was terminated on the basis of my sex (female)."(Dkt. 39, citing Hughes Aff. ¶ 16).

4. "Two weeks prior to the company audit, I informed 'Hess' Corporation that there would be a shrinkage at my store because one(1) of my employees was suspected of taking merchandise. At the same time, male managers Mike Papp, Larry Collins and Dale Copping all had significant shrinkages but were not fired. Mike Papp had a shrinkage about two (2) months before my shrinkage. He was Forty–Five Hundred ($4500.00) Dollars short. He was not disciplined in any way for his . . . shrinkage. Dale Copping had a shrinkage equal to or more than mine and was terminated. Brian Mulcahey held back invoices to hide his shrinkage."(Dkt. 39, citing Hughes Aff. ¶ 19–22).

5. "With regard to paragraph 20 of Joe Grabowski's Affidavit, Tammy Minko, was hired and trained by Joe Grabowski. She had been fired previously by Joe Stagnitta and rehired by Joe Grabowski. The rea-son she was hired is that Tammy is a family friend of the Grabowski family and goes by their home and cuts everyone's hair. She was not hired because she was a female, but because of her personal relationship with the Grabowski family."(Dkt. 39, citing Hughes Aff. ¶ 26).

6. "With regard to the Affidavit of Natalie Bennett, I notice that she was formally promoted to convenience store manager effective October 1, 1997. I filed my EEOC charge alleging discrimination against me due to my sex (female) on September 26, 1997. Thus, 'Hess' management took into account my EEOC charge when they hired Natalie Bennett as a convenience store manager."(Dkt. 39, citing Hughes Aff. ¶ 27).

The other statements which Defendant contends Plaintiff made without personal knowledge are statements in which Plaintiff disagrees with allegations Mr. Grabowski made in his affidavit. The statements relate to Plaintiff's job performance, and circumstances surrounding her employment, of which she does have personal knowledge. As such, these statements should not be stricken.

Defendant also moves to strike several statements in Plaintiff's affidavit which directly contradict her deposition testimony, they are as follows:

1. "[E]ven though all new store managers were sent to Hess headquarters in Woodbridge, New Jersey for manager training, I was never sent to New Jersey for training". (Dkt.38, ¶ 4). This statement directly contradicts Plaintiff's deposition testimony in which Plaintiff states she "was sent to New Jersey for four days, I think, for training."(Dkt. 39, citing to Hughes Dep. I at 44, 46.)

2. In her Affidavit, Plaintiff states that it is "possible that the shrinkage did not, in fact, occur." (Dkt. 38, ¶ 24). This statement directly contradicts Plaintiff's deposition testimony in which Plaintiff states that she was aware that the store was going to be "short" and informed Mr. Grabowski of the shrinkage about two weeks before the month-end store audit. (Dkt. 39 citing to

Hughes Dep. II at 72, 75). Additionally, Plaintiff stated that "as far as [she] knew" the January shrinkage did occur. (Dkt. 39, citing to Hughes Dep. II at 71–72).

3. In her Affidavit, Plaintiff states "that in paragraph ten of Mr. Grabowski's deposition, Mr. Grabowski indicates that I did not properly supervise employees to ensure that cashiers' shortage logs and shift break logs were completed. This is untrue. I did ensure that cashiers shortage logs and break logs were completed. I kept all required records...and completed all paperwork required by Hess policy." (Dkt. 38, ¶ 26). In her deposition, Plaintiff stated that she was given a corrective action for failing to follow the above company policies and that she did not disagree with the corrective action. (Dkt. 39, citing Hughes Dep. II 89–90).

■ The above contradictions contained in Plaintiff's affidavit are made without any explanation for such contradictions and they are not made to correct any previously existing ambiguity. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *See Van T. Junkins and Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir.1984); *see also Essick v. Yellow Freight Systems, Inc.*, 965 F.2d 334, 335 (7th Cir.1992)(holding Plaintiff cannot create an issue of fact by changing deposition testimony). As such, the statements noted above from Plaintiff's affidavit which "merely contradict[s], without explanation, previously given clear testimony," shall be stricken. *See id.*

■ The other statements in the affidavit that Defendant alleges contradict Plaintiff's previous deposition testimony do not appear to be direct contradictions. As such, the Court denies the Motion to Strike the following statements:

1. In her Affidavit, Plaintiff states "at all times during [her] employment more than adequately performed [her] job duties. Specifically, I received good performance evaluations throughout my job tenure. [I]

had good evaluations without exception..." (Dkt. 38, ¶ 4). In her deposition Plaintiff states that her last audit was a "bad audit." (Dkt. 39, citing to Hughes Dep. I at 57.)

The Affidavit is referring to performance evaluations while the deposition is referring to one particular C-store audit.

2. In her Affidavit, Plaintiff states that at the time Mr. Grabowski terminated her he said "you have done nothing wrong. But I am sorry I have to terminate you." (Dkt. 38, ¶ 23). In her deposition, Plaintiff stated that Mr. Grabowski informed her at the time of her termination that she had "done nothing wrong...all I did was have a bad store audit..." (Dkt. 39, citing to Hughes Dep. I at 161).

While there is a difference between Plaintiff's Affidavit and deposition testimony it is not a direct contradiction, but merely a difference. As such, there are no reasons to strike these statement.

■ Finally, Defendant contends that Plaintiff's Affidavit contains inadmissible hearsay, and that such inadmissible hearsay may not be considered in an affidavit in opposition to summary judgment. "Rule 56 of the Federal Rules of Civil Procedure...require[s] information submitted both in support of and in opposition to summary judgment, to be admissible even though the form of the information may be inadmissible." *See International Ship Repair v. St. Paul Fire and Marine Insurance*, 922 F.Supp. 577, 581 (M.D.Fla.1996)(citing *Church of Scientology Flag Service Org. v. City of Clearwater*, 2 F.3d 1514 (11th Cir. 1993) and *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013 (11th Cir.1987)).

■ "Plaintiff's evidence presented in her memorandum [affidavit] in opposition to Defendants' motion for summary judgment must set forth evidence as would be admissible at trial, and thus must be reducible to admissible evidence." *See Bush v. Barnett Bank of Pinellas County*, 916 F.Supp. 1244, 1256 (M.D.Fla.1996). However, in this case, only portions of three of statements challenged by Defendant are in the form of inadmissible hearsay. As such, only the follow-

ing portions of these statements shall be stricken:

1. Dale Copping told me that he and Larry Collins were told to move the office regardless of what I had to say, that what I wanted didn't matter. (Hughes Aff., ¶ 11).

2. [And] asked him what he thought I should do, and he said to leave a message on James' voice mail....(Hughes Aff., ¶ 12).

3. I had been told that I would have to wait for "Hess" maintenance to work on the broken security cameras on Monday, and that "Hess" maintenance was not available for emergency repairs on the weekend.... In fact, in the past, I had been told that they wouldn't come out on weekends. Security people themselves had told me on prior occasions that they only come out during certain hours and that they did not work on weekends. (Hughes Aff. ¶ 26).

■ While there may be hearsay exceptions which could render these statements admissible, Plaintiff has failed to show their admissibility. "Thus, absent a showing of admissibility...[a party] may not rely on rank hearsay...to oppose proper motions for summary judgment." *See Bush* at 1256 (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990))(citing *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 n. 4 (7th Cir.1989); *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987); *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir.1986); *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 16–17 (1st Cir.1986); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir.1980); *Daily Press, Inc. v. United Press International*, 412 F.2d 126, 133 (6th Cir.), cert. denied, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969); *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 677 n. 2 (1st Cir.1967)). As such, the above statements shall be stricken.

## II. Motion for Summary Judgment

### A. Standard of Review

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir. 1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

The Court also stated, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, at 323, 106 S.Ct. 2548. The Court is satisfied that material factual disputes are present which preclude summary judgment.

### B. Analysis

Defendant contends that it is entitled to summary judgment as to Plaintiff's Title VII claim because: (a) most of Plaintiff's claims are time-barred; and(b) there is no evidence that Plaintiff was discriminated against based on her sex.

■ Plaintiff relies on the doctrine of continuous violations to rebut Defendant's allegations that most of Plaintiff's claims are time-barred. To establish a continuous violation, a Plaintiff must show either: (1) one or more sufficiently related acts which fall within the statute of limitation, or (2) that a

system of discrimination has been in place both before and during the statute of limitations. *See Fowler v. Taco Viva, Inc.,* 646 F.Supp. 152, 156 (S.D.Fla.1986)(citing *Miller v. U.S.,* 603 F.Supp. 1244 (D.C.Cir.1985)).

 Plaintiff asserts that she has worked for Defendant for seven years. (Dkt. 38). During this time she trained male counterparts who advanced, while Plaintiff has not, and she has continuously approached her supervisors to seek training which would allow her to advance to the position of Marketing Representative. *Id.* However, Plaintiff's supervisors were unresponsive to her requests or misleading as to the availability of training. *Id.* Plaintiff's affidavit sets forth a matter of fact: whether a continuous violation existed that would extend the alleged violations statute of limitation. *Fowler* at 156. Where an issue of material fact exists a motion for summary judgment must be denied. *Hayden* at 996–97.

There is circumstantial evidence present which raises issues of fact, as to whether or not Plaintiff was discriminated against based on her sex. Defendant employed Plaintiff for seven years. (Dkt. 1). Plaintiff was never provided with the Marketing Representative training which, she alleges, she repeatedly requested. Plaintiff was not promoted to a higher position while male employees whom she trained allegedly advanced to higher positions. These disputed facts and evidence preclude granting of Defendant's motion for summary judgment.

Defendant contends that Plaintiff cannot establish a *prima facie* case because she was not qualified, she was replaced by a female, and there is no evidence that there was any similarly-situated male employee who was treated more favorably.

Regarding Defendant's first contention, that Plaintiff cannot establish a *prima facie* case because she is not qualified, Plaintiff has established a *prima facie* case through the testimony in her affidavit. (Dkt. 38). Plaintiff alleges that similarly situated male employees were treated differently. Specifically, her male counterparts of equal or lesser experience were given opportunities to receive Marketing Representative training, while she was not afforded such opportunities.

Plaintiff trained other employees, who eventually became managers and assistant managers at other C-stores, during her seven year employment. This raises issues of fact as to whether or not Plaintiff was qualified for the position of Marketing Representative. First, if Plaintiff is not qualified, then what are the qualifications for the position, and second, why was Plaintiff not afforded the opportunity to receive training. In considering all the evidence in the light most favorable to the non-moving party, the Court finds there to be a "substantial conflict in the evidence to support a jury question." *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997)(citing *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)). The Plaintiff has met her burden of establishing a *prima facie* case.

 Under the framework of discrimination law the burden now shifts to Defendant to give a "legitimate, nondiscriminatory" reason for the termination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Defendant has met this burden through evidence that Plaintiff was terminated due to three corrective actions brought against Plaintiff by her supervisor. (Dkt. 14). This rebuts Plaintiff's *prima facie* case of discrimination. The burden now returns to Plaintiff who must bring forth evidence "sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." *Combs* at 1520 (citing to *McDonnell* at 804, 93 S.Ct. 1817).

The above evidence offered to establish a *prima facie* case is enough to controvert Defendant's, alleged legitimate reasons for the adverse employment actions. The evidence raises questions of fact as to whether the adverse employment actions taken against Plaintiff were legitimate or a pretext.

Defendant relies on the fact that Plaintiff was replaced by a female to show that Defendant did not act in a discriminatory manner toward Plaintiff. Courts considering such situations may look to other factors. *See Edwards v. Wallace Community College,* 49

**690**

F.3d 1517, 1521 (11th Cir.1995)(citing *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534–35). Defendant was on notice that Plaintiff had filed a complaint with the EEOC prior to hiring her permanent replacement. (Dkt. 38). This raises the factual question whether the hiring of a female replacement is a pretext by Defendant since it was on prior notice of the EEOC complaint.

 Finally, Defendant contends that there is no evidence that there was any similarly-situated male employee who was treated more favorably. However, there is circumstantial evidence that would indicate otherwise. "Circumstantial evidence that would tend to show pretext in a Title VII race [employment] discrimination case, includ[e]: (1) that similarly situated white [male] employees were treated differently in the same circumstances;(2) facts as to the employer's treatment of the plaintiff during employment;(3) the employer's general policy and practice with respect to minority employment." *See Williams v. Anheuser–Busch, Inc.*, 957 F.Supp. 1246, 1250 (M.D.Fla.1997)(quotations omitted)(citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)(establishing the burden shifting analysis in Title VII cases)).

In the case at hand, Plaintiff has offered circumstantial evidence that similarly situated male employers where treated differently in the same circumstances. Specifically, that male employees who were trained by Plaintiff advanced to C-store Managers and were given greater responsibility or promotions. (Dkt. 38). Plaintiff further alleges that she was not provided such opportunities even though she had seven years of experience as a C-store manager.

There is conflicting evidence in this case, and further fact-finding is required. Factual questions present include, but are not limited to, whether Defendant denied Plaintiff promotional opportunities because of her sex, whether Defendant limited promotional opportunities to Plaintiff by failing to provide her with training for the position of Marketing Representative, whether Plaintiff was fired based on a pretextual reason, and whether Plaintiff was replaced by a female

due to the fact that Defendant was on notice that an EEOC complaint had been filed.

Plaintiff's Affidavit clearly establishes disputes as to material facts and precludes the granting of any Motion for Summary Judgment. "A summary judgment motion is not the proper forum for assessing the relative weight of conflicting evidence." *Potomac Valve & Fitting v. Crawford Fitting*, 829 F.2d 1280, 1285 (4th Cir.1987). "Summary judgment should only be granted when there are absolutely no factual disputes that must be decided by the jury." *See Baldwin* at *3. Accordingly, it is,

**ORDERED** that Defendant's Motion to Strike Plaintiff's Affidavit (Dkt. 39) is **denied,** the Motion to Strike Portions of Affidavit (Dkt. 39) is **granted in part and denied in part,** as stated above, and Defendant's Motion for Summary Judgment (Dkt. 14) is **denied.**