**Lucille JOHNSON, Plaintiff,**

v.

**SCOTTY'S, INC., a Florida corporation, Defendant.**

**No. 8:99–374–CIV–T–17E.**

United States District Court, M.D. Florida, Tampa Division.

Sept. 7, 2000.

Douglas A. Lopp, Law Office of Douglas A. Lopp, Brandon, FL, for Lucille Johnson, plaintiffs.

David J. Stefany, Allen, Norton & Blue, P.A., Tampa, FL, for Scotty's Inc., a corporation, defendants.

### ORDER ON DEFENDANT'S MOTION TO STRIKE AND FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause comes before the Court on the following motions:

1. Scotty's Inc.'s motion for summary judgment filed March 29, 2000. (Dkt.19).

2. Scotty's Inc.'s memorandum of law in support of motion for summary judgment filed March 30, 2000. (Dkt.20).

3. Affidavit of Penny Cardwell submitted by Lucille Johnson in opposition to Scotty's, Inc.'s motion for summary judgment filed April 21, 2000. (Dkt.27).

4. Affidavit of Lucille Johnson submitted by Lucille Johnson in opposition

to Scotty's, Inc.'s motion for summary judgment filed April 21, 2000, and April 27, 2000. (Dkts.29, 32).

5. Lucille Johnson's memorandum in opposition to Scotty's, Inc.'s motion for summary judgment filed April 21, 2000. (Dkt.28).

6. Scotty's Inc.'s motion to strike portions of Plaintiff's response affidavits filed on April 27, 2000. (Dkt.33).

7. Lucille Johnson's memorandum in opposition to Scotty's, Inc.'s motion to strike portions of Plaintiff's response affidavits filed on May 18, 2000. (Dkt.35).

## FACTUAL SUMMARY

This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.*, (ADEA), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et seq.*, (FCRA). The facts as stated are taken from the depositions, exhibits, and affidavits in the record. Where there are conflicts in the evidence, they are resolved for purposes of this motion in favor of Plaintiff as the nonmoving party.

Lucille Johnson (hereinafter "Plaintiff") was fifty-nine years old at the time she was terminated from her job at Scotty's, Inc. (hereinafter "Defendant"). (Dkt.1). Plaintiff claims that, as of January 1996, Defendant subjected her and other "older" co-workers to disparate treatment in the workplace. (Dkt.1). Plaintiff further claims that Defendant discharged her on May 30, 1997, on the basis of her age, and, therefore, violated the ADEA and FCRA. (Dkt.1).

Defendant (Scotty's, Inc.) is a Florida corporation and has retail stores throughout Florida, Georgia, and Alabama. (Dkt.19). Defendant's corporate office is located in Winter Haven, Florida. (Dkt.19). Defendant employs more than twenty employees and is a covered entity under the ADEA. (Dkt.19). Frank Morgan was the general store manager at Defendant's Brandon store and supervised Plaintiff. (Dkt.19). Kelly Hennecy was the assistant store manager at Defendant's Brandon store. (Dkt.19). David Stauter was the district manager and Frank Morgan's supervisor. (Dkt.19).

Plaintiff was employed by Defendant from September 1984 to May 30, 1997, at the store located in Brandon, Florida. (Dkt.1). During that time period, Plaintiff worked for Defendant in various job positions including cashier, head cashier, and customer service advisor. (Dkt.1). Plaintiff claims she performed her duties as a cashier in an exemplary manner and provided good customer service. (Dkt.28). Plaintiff received awards of distinction concerning her work performance and, on occasion, received favorable comments from customers that warranted recognition from corporate officers. (Dkts.19, 28). It is not disputed that Plaintiff was a satisfactory employee up until 1996. (Dkt.19).

In mid–1996, management implemented the Senn–Delaney program at the Brandon store which required operational changes concerning labor scheduling and job responsibilities. (Dkt.19). Some of these changes included mandatory cross-traning so all employees could assist customers regardless of the department they were assigned to. (Dkt.19). These operational changes took effect in August of 1996. (Dkt.19). Defendant claims this program was designed as an effort to compete with other home improvement retail chains and to enhance customer service. (Dkts.19, 20). Defendant also claims that these operational changes affected all Brandon store employees. (Dkt.24). Plaintiff disputes this claim by alleging that she personally observed younger employees being treated differently than older employees in respect to scheduling and job duty assignments. (Dkts.30, 32). Shortly after these changes took effect, Floyd Schweikert, an older employee, resigned allegedly because management changed his day schedule to nights and weekends. (Dkt.24).

In March 1997, Defendant's corporate office allegedly received a customer com-

plaint call regarding an incident with Plaintiff. (Dkt.19). The caller claimed that she had asked Plaintiff for a pen so she could fill out a job application for employment at the Brandon store and that Plaintiff refused to give her a pen. (Dkt.19). The corporate office reported the "pen" incident to district manager, David Stauter. (Dkt.19). Mr. Stauter claims that he called and talked to the person who initiated the complaint. (Dkt.19). Then, Mr. Stauter called the Brandon store manager, Frank Morgan, and asked him to give Plaintiff a written employee counseling notice. (Dkt.19). Plaintiff claims that she did not give the lady her pen because she was busy waiting on other customers. (Dkt.30). Plaintiff contests and denies the assertions that she was rude to the lady who requested the pen. (Dkts.28, 30).

On May 27, 1997, Defendant's corporate office received a customer complaint call from Mr. Grenier, who was a contractor at that time. (Dkt.19, 20). On the day he called corporate, Mr. Grenier allegedly had encountered some difficulties in trying to purchase lumber from the Brandon store. (Dkt.19). Mr. Grenier alleges in the complaint that Plaintiff displayed a negative and uncooperative attitude towards him. (Dkts.19, 22). It is undisputed that Penny Cardwell was the cashier assisting Mr. Grenier. (Dkt.19). However, when the register would not bring up the correct sales price for the lumber, Ms. Cardwell asked Plaintiff for assistance. (Dkts.19, 30). Plaintiff claims that she told Ms. Cardwell to get a manager. (Dkt.30). Plaintiff further contends that she did not talk to Mr. Grenier. (Dkt.30). Plaintiff refutes Mr. Grenier's allegations by submitting Penny Cardwell's affidavit. (Dkt.27). Ms. Cardwell states in her affidavit that "Plaintiff was in no way involved in the incident." (Dkt.27).

The corporate office reported the "Grenier" incident to district store manager, David Stauter. (Dkt.19). Upon receipt of the complaint, Mr. Stauter then called Mr. Grenier and talked to him about the incident. (Dkt.19). It is disputed whether Mr. Stauter called the Brandon store manager, Frank Morgan, and asked him to talk to Plaintiff about what happened. (Dkt.28). Mr. Morgan states in his deposition that Mr. Stauter specifically instructed him not to investigate the matter, because corporate human resources was evaluating it. (Dkt.30).

After Mr. Stauter consulted with human resources, he made the decision to terminate Plaintiff. (Dkt.19). Mr. Stauter claims that he based his decision on the prior written warning involving the "pen" incident and the subsequent "Grenier" incident. (Dkt.19). Because Plaintiff had been employed for Defendant for over ten years, Mr. Stauter had to get approval from the regional manager, Larry Cason, to terminate Plaintiff. (Dkt.19). Mr. Cason approved the recommendation to terminate Plaintiff after Mr. Stauter discussed the incidents with him. (Dkt.19). Mr. Stauter, then, contacted store manager, Frank Morgan, and directed him to terminate Plaintiff. (Dkt.19). Frank Morgan terminated Plaintiff on May 30, 1997. (Dkt.19).

## PROCEDURAL HISTORY

On September 21, 1997, Plaintiff timely filed a written charge of employment discrimination with the United States Equal Employment Opportunity Commission (EEOC). (Dkt.1, 19). On November 24, 1998, the EEOC issued Plaintiff a "Notice of Right to Sue." (Dkt.1). Then, Plaintiff timely filed a complaint with this Court on February 22, 1999. (Dkt.1). On June 30, 1999, this Court entered an order granting: (1) a motion to dismiss Plaintiff's second cause of action for intentional infliction of emotional distress; and, (2) a motion to strike a punitive damage claim. (Dkt.12).

## DISCUSSION

The Court shall consider the following issues respectively: (I.) Motion to strike portions of affidavits, (II.) Motion for sum-

mary judgment, and, (III.) Dismissal of age hostile work environment allegations.

## I. MOTION TO STRIKE PORTIONS OF AFFIDAVITS

First, this Court will address Defendant's motion to strike portions of the affidavits that Plaintiff submitted in opposition to Defendant's motion for summary judgment, and Plaintiff's memorandum of law in opposition to Defendant's motion to strike.

### A. Standard of Review

■ Affidavits filed in opposition to a motion for summary judgment, which do not comply with Rule 56(e) of the Federal Rules of Civil Procedure, are subject to a motion to strike. *See Hughes v. Amerada Hess Corporation,* 187 F.R.D. 682, 684–85 (M.D.Fla.1999); *Barnebey v. E.F. Hutton & Co.,* 715 F.Supp. 1512 (M.D.Fla.1989); 6 Moore's Federal Practice P56.22 (1974). An affidavit must be stricken if it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge. *See Hughes,* 187 F.R.D. at 686; *Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.,* 1993 WL 229601, at 5 (M.D.Fla.1993); *Fullman v. Graddick,* 739 F.2d 553 (11th Cir.1984). Rule 56(e) also requires information submitted, both in support of and in opposition to summary judgment, to be admissible in evidence. *See Hughes,* 187 F.R.D. at 687; *Bush v. Barnett Bank of Pinellas County,* 916 F.Supp. 1244, 1256 (M.D.Fla.1996); F.R.C.P. 56(e). Statements that constitute hearsay are not admissible. *See Hughes,* 187 F.R.D. at 687–88. "Absent a showing of admissibility...[a party] may not rely on rank hearsay...to oppose proper motions for summary judgment." *Bush,* 916 F.Supp. at 1256 (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)).

### B. Analysis

Defendant claims that Plaintiff has submitted affidavits to avoid summary judgment, which contain statements that are conclusory and/or are not within Plaintiff's personal knowledge, contradict deposition testimony, or are hearsay statements that are not admissible at trial. (Dkt.33). Therefore, Defendant requests the Court to strike portions of the affidavits of Lucille Johnson and Penny Cardwell.

### 1. Johnson Affidavit Statements

Defendant moves to strike several statements in Lucille Johnson's affidavit on the grounds that these statements are conclusory and/or are not within Plaintiff's personal knowledge. These statements are as follows:

(a) "I observed from late 1996 through my termination date a pattern of activity whereby job descriptions were changed by management with the result that older employees (over fifty years of age specifically) were adversely affected."

(b) "I also observed the younger, part-time employees being permitted to be tardy to work, absent from work and allowed to make mistakes with respect to their job duties. These mistakes included the failure to mix paint correctly, allowed to be rude to customers without discipline, and permitted to request preferences with respect to work schedules. The individuals named above were not permitted the same benefits or preferences and were disciplined for slight infractions of policy."

■ According to the Federal Rules of Evidence, personal knowledge can be established by showing that the witness was in a physical position to see, hear, or otherwise perceive the matters to which the testimony relates. *See* F.R.E. 602. The Court finds in this case that Lucille Johnson was an employee of Defendant for over twelve years, and, thereby, was in a position to observe operational changes concerning work scheduling and job responsibilities. Thus, the Court will not strike the above-listed statement, labeled "a." Furthermore, Lucille Johnson could also make personal observations in relation

to how others she worked with performed their jobs. The Court, however, finds that Lucille Johnson was not in a managerial position and therefore did not have personal knowledge of other individuals being disciplined. Plaintiff would have to rely on what others told her or on a disciplinary write up that she did not prepare. As to whether other individuals were permitted the same benefits or preferences, this calls for opinion testimony. Therefore, the Court strikes the following sentence from the above-listed statement, labeled "b": "The individuals named above were not permitted the same benefits or preferences and were disciplined for slight infractions of policy."

Defendant also moves to strike the following statement in Lucille Johnson's affidavit on the grounds that it is conclusory and inconsistent with Plaintiff's deposition testimony:

(a) "...that record of employee counseling did not state that there had been a previous complaint in the past several weeks. The document that I was given at my deposition reporting to be the same counseling form has been changed and information added to it. Further I wrote comments in the employee section of that document that I disagreed with what was written at the time. That document is attached as Exhibit B."

In reviewing Plaintiff's deposition, the Court finds that this statement in the affidavit is consistent with her deposition testimony. Plaintiff states in her deposition that when she signed the document that it did not contain the following sentence, "Second complaint in past several weeks, rudeness to customer must stop or further disciplinary actions will be taken." (Dkt.30). Plaintiff also says in her deposition that she wrote comments in the employee section of that document, which were now not contained within the document shown to her during the deposition. (Dkt.30). The Court denies the motion to strike the above-listed statement.

■ Defendant moves to strike the following statement in Lucille Johnson's affidavit on the grounds that it is hearsay and not premised on personal knowledge:

(a) "...Mr. Schweikert was told by Mr. Morgan that he was being hostile and rude to customers and that he would be terminated if he did not retire. His disciplinary write up is also attached as Exhibit B as it was false at the time of the alleged incident."

Plaintiff argues that a hearsay exception exists, specifically that Mr. Morgan is an agent of the Defendant and it is a statement against interest. (Dkt.35). First, this is hearsay within hearsay. Federal Rules of Evidence require an exception for each level of hearsay. See F.R.E. 805. Second, Plaintiff confuses "statement against interest" with the admissions by party-opponent, hearsay exception. See F.R.E. 801, 804. If Mr. Schweikert is the person testifying that Mr. Morgan made this statement to him, then it would be admissible under the admissions by party-opponent, hearsay exception. However, this is not the case because it is Lucille Johnson who is stating what Mr. Morgan told Mr. Schweikert. This adds an additional level of hearsay and there are no hearsay exceptions available. The Court also finds that Lucille Johnson does not have personal knowledge of the disciplinary write up on Mr. Schweikert and that it would be erroneous for Lucille Johnson to rely on it. Therefore, the Court grants the motion to strike the entire, above-listed statement from Lucille Johnson's affidavit.

■ Defendant also moves to strike the following statement in Lucille Johnson's affidavit on the grounds that it is conclusory and calls for speculation:

(a) "I also note that the decision to terminate me was made in March, 1997 when the 'pen' incident occurred and not in May, 1997. Attached is Exhibit C, which is a letter in my file by the Human Resources Director,

Mr. Snelgrove, that indicates that my termination was confirmed in March, 1997. I believe that this note further indicates that the Defendant was 'looking' for termination decisions and not addressing the facts of my employment performance nor my concerns regarding age discrimination."

The contents of the letter referenced here would be admissible as an admission by party-opponent. This letter is allegedly written by Defendant's director of human resources. (Dkt.29). Also, this letter is dated March 27, 1997, and requests that Lucille Johnson be terminated. (Dkt.29). The Court finds that Lucille Johnson's statement in her affidavit restates some of the contents of this letter and that the first two sentences are not conclusory or based on mere speculation. As for the last sentence, the Court finds that this is a lay witness' opinion about what the letter means. Under the Federal Rules of Evidence, Rule 701 requires that it be established that Lucille Johnson have personal knowledge of the letter to lay the predicate to admit lay witness opinion testimony. *See* F.R.E. 701. The Court finds that Lucille Johnson would not have personal knowledge because she did not write the letter and her opinion is formed on speculation. Therefore, the Court strikes the following sentence from the above-listed statement: "I believe that this note further indicates that the Defendant was 'looking' for termination decisions and not addressing the facts of my employment performance nor my concerns regarding age discrimination."

## 2. Cardwell Affidavit Statement

■ Lastly, Defendant moves to strike the following statement from Penny Cardwell's affidavit on the grounds that it is a speculative and conclusory statement not premised on factual evidence or on personal knowledge:

(a) "From the comments of the store manager, I believe that the Plaintiff was selected for termination for rea-

sons not associated with the incident regarding the contractor . . ."

Plaintiff argues that Penny Cardwell had personal knowledge because the store manager made comments to her. (Dkt.35). Plaintiff also contends that these comments are statements against interests. (Dkt.35). First, the Court notes that, in the above-listed statement, Penny Cardwell does not specifically say what the comments are, but instead gives an opinion about what the comments mean. Therefore, the Court finds this is a lay witness giving an opinion, from which she forms on the basis of comments, about management's decision to terminate the Plaintiff. Penny Cardwell was a cashier and had no personal knowledge as to the reasons for Lucille Johnson's termination. Second, Plaintiff confuses "statements against interest" with the admissions by party-opponent, hearsay exception. *See* F.R.E. 801, 804. Had Penny Cardwell said what the comments were that the store manager made to her; then, these comments would be admissible under admissions by party-opponent. The Court still notes the distinction between stating the comments and forming an opinion on the basis of comments. Therefore, the Court grants the motion to strike the entire, above-listed statement from Penny Cardwell's affidavit.

## II. MOTION FOR SUMMARY JUDGMENT

Next, the Court will consider Defendant's motion for summary judgment and memorandum of law in support thereof, and Plaintiff's memorandum of law in opposition to Defendant's motion for summary judgment.

### A. Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The evidence presented must be construed in favor of the nonmoving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Evans v. Meadow Steel Products, Inc.,* 579 F.Supp. 1391, 1394 (N.D.Ga.1984). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment should be granted. *See Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir.1989) (citing *Celotex,* 477 U.S. at 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265).

**B.  Age Discrimination in Employment Act**

■  The Age Discrimination in Employment Act states "it shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(2000). On a motion for summary judgment in an age discrimination com-plaint, Plaintiff has the initial burden of establishing a *prima facie* case of discrimination. A *prima facie* case can be established through direct evidence, statistical evidence, or the presumption recognized under the four-part test of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Baker v. Sears, Roebuck & Co.,* 903 F.2d 1515 (11th Cir.1990); *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989); *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1442–43 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *Pace v. Southern Railway System,* 701 F.2d 1383, 1386 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

**1.  Plaintiff's *Prima Facie* Case**

■  In this case, Plaintiff concedes that she did not offer any direct or statistical evidence of age discrimination but chooses to make a *prima facie* case under the McDonnell Douglas test. (Dkt.28). Under this test, Plaintiff must show that: (1) she is a member of the protected group; (2) she was subjected to an adverse employment action; (3) she was replaced by someone either outside the protected group, or, if within the protected group, by someone substantially younger than herself; and, (4) she was qualified for the position from which she was terminated. *See Pace,* 701 F.2d at 1386; *Goldstein,* 758 F.2d at 1443; *Trumbull v. Health Care & Retirement Corp. of America,* 756 F.Supp. 532, 536 (M.D.Fla.) (Kovachevich, J.), aff'd. mem., 949 F.2d 1162 (11th Cir.1991).

It is undisputed that Plaintiff, at age fifty-nine, was in the protected group and that an adverse employment action occurred when Defendant terminated her on May 30, 1997. (Dkts.19, 28). The Court, thereby, finds that Plaintiff satisfies the first two prongs. As to the third prong, Plaintiff claims that Defendant reassigned her cashier duties to younger employees at Defendant's store in Brandon, Florida. (Dkts.28, 30,). Plaintiff specifically alleges

that Penny Cardwell, a cashier in her mid–20s, is one of the younger cashiers who took Plaintiff's place and/or received additional work hours. (Dkt.28). Defendant's store manager, Frank Morgan, states in his deposition that he could not remember if Penny Cardwell or any other cashiers were reassigned Plaintiff's cashier duties. (Dkt.30). Since a review of the record shows that Defendant has not denied Plaintiff's contention and the Court must view the evidence in a light most favorable to the nonmoving party, this Court finds that Plaintiff meets the third prong.

█ Finally, Plaintiff claims the fourth prong is met because she was qualified for her position and performing satisfactorily at the time she was terminated. (Dkt.28). Defendant, however, argues that Plaintiff was no longer qualified for her job due to her inability to afford proper customer service. (Dkt.20). According to *Baker*, Plaintiff may satisfy the fourth prong by submitting evidence that Plaintiff performed her responsibilities for several years without complaint. 903 F.2d at 1520 (11th Cir.1990). Defendant concedes that Plaintiff was a satisfactory employee for a number of years. (Dkt.19). Additionally, Defendant acknowledges that Plaintiff received awards of distinction concerning her work performance and, on occasion, received favorable comments from customers that warranted recognition from corporate officers. (Dkt.19). It was only within the last year of Plaintiff's employment that Defendant contends Plaintiff performed unsatisfactorily. (Dkt.19). Plaintiff, however, disputes Defendant's contention that she performed unsatisfactorily during the last year. (Dkt.28). Nevertheless, the Court finds that Plaintiff satisfies the fourth prong because it is undisputed that Plaintiff was a satisfactory employee for a number of years, prior to 1996. Having met the four prongs of the McDonnell Douglas test, the Court finds that Plaintiff has established a *prima facie* case of age discrimination.

## 2. Defendant's Legitimate, Non–Discriminatory Reasons

█ Once Plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer "to articulate some legitimate, non-discriminatory reason" for the alleged discriminatory action. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983). "Because the Defendant need only produce, not prove, a non-discriminatory reason, this burden is 'exceedingly light.'" *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995) (quoting *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983)). Defendant rebuts Plaintiff's *prima facie* case by claiming that its corporate office received two customer complaints against Plaintiff via a consumer hotline. (Dkts.19, 20). Defendant produces documentary evidence of a customer complaint call that was allegedly received by the corporate office on May 27, 1997, concerning the "Grenier" incident. (Dkt.22). Defendant also produces evidence of a record of employee counseling dated March 31, 1997, regarding the "pen" incident. (Dkt.25). Defendant claims that it terminated Plaintiff's employment on the basis of these complaints. (Dkts.19, 20).

█ Although Plaintiff does not dispute that Defendant received two customer complaints, Plaintiff does dispute the factual allegations of the "Grenier" incident. (Dkt.28). Furthermore, it is noted that Plaintiff contests the authenticity of the employee record of counseling that Defendant has submitted. (Dkt.28). The Court notes Plaintiff's arguments, but also finds that Defendant has met the burden of producing evidence to "raise a genuine issue of fact as to whether it discriminated against Plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981).

### 3. Pretextual Reasons

Once Defendant has met his burden of production, Plaintiff must prove by a preponderance of evidence that the employer had a discriminatory intent, and that the reason given for the adverse employment decision was merely pretextual. *See Id.* at 256, 101 S.Ct. 1089; *See also Perryman,* 698 F.2d at 1142 (11th Cir.1983). If Plaintiff fails to set forth specific facts showing that a genuine issue exists as to whether employer's reasons are pretextual, then summary judgment is appropriate. *See Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988).

Plaintiff contends that Defendant's basis for terminating her for poor customer service was pretextual. First, Plaintiff submits Penny Cardwell's affidavit to dispute Defendant's reliance on the factual allegations of the reported "Grenier" incident. (Dkt.27). Mr. Grenier, a contractor, had called the corporate office and allegedly complained about Plaintiff's attitude and inability to provide customer service during a transaction. (Dkts.19, 20, 22). However, Ms. Cardwell states in her affidavit that Plaintiff did not address the contractor and only advised her to get a manager. (Dkt.27). Ms. Cardwell also states that prior to May 30, 1997, she told the assistant manager, Kelly Hennecy that, "Plaintiff was in no way involved in the incident." (Dkt.27). Additionally, Ms. Cardwell states that on two separate occasions she told the store manager, Frank Morgan, that Plaintiff had no direct contact with the contractor, Mr. Grenier. (Dkt.27).

Second, Plaintiff provides excerpts from the deposition of store manager, Frank Morgan. Mr. Morgan states in his deposition that: (1) Penny Cardwell did tell him that Plaintiff was not involved in the "Grenier" incident; (2) David Stauter, the district store manager, instructed him not to investigate the matter involving Mr. Grenier; (3) David Stauter made the decision to terminate Plaintiff after the "Grenier" incident; (4) David Stauter instructed him to terminate Plaintiff, despite telling him about what Penny Cardwell had said; and,

(5) to his knowledge, up until Plaintiff's termination, she was providing proper customer service to Scotty's customers and he would not have terminated her. (Dkt.30).

Additionally, Plaintiff argues that there is evidence to support that corporate targeted the "older" workers because many of them were long time employees. (Dkt.28). Plaintiff claims that Defendant wanted to ultimately terminate the older employees. (Dkt.28). Plaintiff states in her affidavit and deposition that she personally observed management changing older co-workers' schedules, from days to nights and weekends. (Dkts.30, 32). Plaintiff also claims that management intentionally changed older, co-workers' job duties to essentially make them quit. (Dkt.30, 32). However, Defendant contends that in mid–1996 the Brandon store implemented these operational changes, which required all employees to be cross-trained and have flexible work schedules, in order to provide better customer service. (Dkt.19). Plaintiff argues that Defendant's proffered explanation for these changes is pretextual and that management did not make the younger employees comply by these new standards. (Dkt.28). The record shows that Defendant terminated Norman Gochnauer on May 26, 1997, and Floyd Schweikert was allegedly forced to resign from his employment in August of 1996. (Dkt.30). Both of these individuals were purportedly members of the protected class due to their ages.

Plaintiff also offers excerpts of the deposition of store manager, Frank Morgan, in support of her contentions. Mr. Morgan states in his deposition that: (1) the wage rate of the employees who were terminated was an issue in the decision-making process for termination; and, (2) Plaintiff's age could have been a factor for corporate's decision to terminate her. (Dkt.30). Second, Plaintiff states in her own deposition that on numerous occasions she talked to managers about how she and other older co-workers were being subjected to disparate treatment: (1) she talked to former,

store manager, Fred Abel, about a former, assistant manager, Pablo Girardo, who allegedly yelled at her in front of customers; (2) she talked to assistant manager, Kelly Hennecy, about how young employees were treated differently; and, (3) she claims she told store manager, Frank Morgan, that corporate terminated her because of her age. (Dkt.30).

Lastly, Plaintiff disputes Defendant's reliance on the factual allegations which were reported in an employee record of counseling, concerning the "pen" incident. (Dkt.28). Plaintiff alleges that Defendant falsified this record by adding the following sentence, "Second complaint in past several weeks, rudeness to customer must stop or further disciplinary actions will be taken." (Dkts.28, 30). Plaintiff denies that the "pen" incident was the second complaint. (Dkt.28). Plaintiff also claims that she had written comments in the employee section of that document, which were now not contained within the document. (Dkts.30, 32). In support of this allegation, Plaintiff offers excerpts of the deposition of store manager, Frank Morgan. Mr. Morgan states in his deposition that: (1) David Stauter instructed him to counsel Plaintiff and specifically told him what to write in the employee record of counseling; (2) he was unaware of any complaint that had allegedly occurred prior to the "pen" incident; and, (3) he does not know if the contents of the employee record of counseling are accurate. (Dkt.30).

In considering Plaintiff's argument, the Court finds that Plaintiff raises genuine issues of material fact that should be left to the trier of facts. Therefore, summary judgment is not warranted and the Court denies Defendant's motion for summary judgment.

## III. DISMISSAL OF AGE HOSTILE WORK ENVIRONMENT ALLEGATIONS

Lastly, the Court shall consider Defendant's request to dismiss Plaintiff's allegations of an age hostile work environment. (Dkt.20).

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint to determine whether it sets forth sufficient allegations to establish a claim for relief. A district court should not dismiss a complaint for failure to state a claim solely on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Additionally, when deciding a motion to dismiss, a court is required to view the complaint in the light most favorable to the plaintiff and accept the truthfulness of well-pleaded facts. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *See also Beck v. Deloitte et al.*, 144 F.3d 732, 735–36 (11th Cir.1998) (quoting *St. Joseph's Hosp. Inc. v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir.1986)).

### B. Analysis

██ Defendant argues that Plaintiff made allegations of an age hostile work environment in her complaint, (Dkt.1), and that these allegations must be dismissed. (Dkt.20). Defendant contends that Plaintiff's allegations do not rise to the level of actionable harassment. (Dkt.20). Defendant relies on *Burns v. AAF–McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir.1999) (citing *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir.1996) (recognizing a hostile environment claim under ADEA)). In *Crawford*, the Sixth Circuit held that a claim for hostile work environment under the ADEA could be established by showing that: (1) Plaintiff is at least forty years old; (2) Plaintiff was harassed based on her age; (3) the harassment had the effect of unreasonably interfering with Plaintiff's work, creating an environment that was both objectively and subjectively hostile or offensive; and, (4) Plaintiff has some basis for imputing liability to her employer. 96 F.3d at 834–35

(6th Cir.1996). The Court finds that Defendant relies erroneously on another circuit court's rationale because the Eleventh Circuit has not adopted the Crawford test.

In *U.S. Equal Employment Opportunity Commission v. Massey Yardley Chrysler Plymouth, Inc.*, the Eleventh Circuit affirmed a jury verdict that found Plaintiff was subjected to a hostile work environment based on age. 117 F.3d 1244, 1244 (11th Cir.1997). The Eleventh Circuit stated that "the matter was clearly for the jury, turning 'largely on credibility determinations committed to the trier of fact.'" *Id.*, at 1249. Therefore, the Court finds that Plaintiff's allegations of an age hostile work environment in her complaint are factual issues that should be left for the jury. Thus, the Court denies Defendant's request to dismiss these allegations.

## CONCLUSION

As for Defendant's motion for summary judgment, the Court finds that genuine issues of material fact exist and summary judgment is precluded. The Court further finds that it would be improper to dismiss Plaintiff's allegations of an age hostile work environment because this matter should be left to the trier of fact. Accordingly, it is

**ORDERED** that Defendant's motion to strike portions of Plaintiff's affidavits (Dkt.33) submitted in opposition to Defendant's motion for summary judgment be **granted in part** and **denied in part**, as previously articulated; and Defendant's motion for summary judgment (Dkts.19, 20) be **denied.**